**IN THE SUPREME COURT OF MISSISSIPPI**

**NO. 2002-CP-00546-SCT**

*KENNETH PEDEN, SR.*

*v.*

*THE CITY OF GAUTIER, MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 03/19/2002 |
| TRIAL JUDGE: | HON. JAYE A. BRADLEY |
| COURT FROM WHICH APPEALED: | JACKSON COUNTY CHANCERY COURT |
| ATTORNEY FOR APPELLANT: | PRO SE |
| ATTORNEYS FOR APPELLEE: | ROBERT G. RAMSAY |
| | JERRY L. MILLS |
| NATURE OF THE CASE: | CIVIL - OTHER |
| DISPOSITION: | AFFIRMED - 04/01/2004 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE SMITH, C.J., COBB, P.J., AND CARLSON, J.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1.     This case comes to us after the trial court granted the City of Gautier's Motion For Summary Judgment. Plaintiff Kenneth Peden, Sr., filed a Motion For Injunctive Relief and Motion for Declaratory Relief in the Jackson County Chancery Court seeking to enjoin the enforcement of the chancery court's order in a separate action approving the City's annexation of the Gautier Utility District. Chancellor Jaye A. Bradley found that the Special Chancellor's order in the annexation case was dispositive of the issues raised in Peden's pleadings and that summary judgment was thus appropriate. We agree.

## FACTS AND PROCEEDINGS IN THE CHANCERY COURT

¶2.     The City of Gautier filed a complaint for annexation, including the territory of the Gautier Utility District (GUD) on August 30, 1999. The Jackson County Chancery Court, Special Chancellor Donald Patterson, found that the annexation was reasonable. Kenneth Peden, Sr., a duly elected Commissioner of the GUD, filed several post-trial motions, including (1) a Motion For Injunctive Relief and Motion For Declaratory Relief and (2) a Motion for New Trial.  The first motion was withdrawn by Peden.  The second motion was denied. An appeal was filed by Brian Britt to this Court, which this Court dismissed.  ***Britt v. City of Gautier,*** No. 2000-AN-01129-SCT.

¶3.     In a separate and subsequent action commenced in the Jackson County Chancery Court, Peden filed a Motion For Injunctive Relief and Motion for Declaratory Relief, identical to the motion withdrawn in the annexation case.  That motion was filed pro se and reflected that Peden was an elected commissioner of the GUD.  In essence, the motion sought an injunction preventing the "proposed assumption of the GUD by the City of Gautier" because of violations of (1) Miss. Code Ann. § 21-27-7 for failure to conduct an election; (2) Local and Private Law Chapter No. 923, H.B. 1376, dated 1987, and Chapter 831, H.B. 1641, dated 1991, for failure to conduct an election and to submit the matter to the U.S. Attorney General; (3) H.B. 1641 because an area known as "Grasshopper Point" was exempted; and (4) H.B. 1641, Section 100 of the Constitution of the State of Mississippi, and Miss. Code Ann. §§ 19-05-151 et seq. for failure of the chancellor to make provision for or a finding relating to the assumption of the GUD.

¶4.     The matter was removed from the chancery court's active docket due to inactivity, but was later reinstated at Peden's request.  Although no minutes of GUD were provided in the record, the

testimony reflects that GUD's Board of Directors ("Board") hired David Kihyet to represent the interests of the Board and/or Peden. The City filed a Motion for Summary Judgment claiming that Peden's action was barred by the doctrine of res judicata.

¶5.     Thereafter, several meetings of the Board were conducted. The final meeting was held the night before the hearing on the summary judgment motion where, by a vote of 4-0 (Peden abstaining), the Board voted to intervene in Peden's lawsuit. Also, by a vote of 4-1, the Board voted to enter into an Agreed Order with the City finding: (1) that Miss. Code Ann. § 21-27-7 "has no application to the assumption of operation and maintenance and the assets, liabilities and other contractual obligations" of GUD by the City; (2) that Chancellor Patterson's ruling in the annexation case complied with all laws cited in Peden's complaint and is dispositive of all issues raised in that complaint; (3) that Section 100 of the Constitution and §§ 19-5-151 et seq. had no application to the assumption of operation and maintenance and the assets, liabilities and other contractual obligations" of GUD by the City; ( 4) that the City was in the process of obtaining preclearance under Section 5 of the Voting Rights Act of 1965 and upon receipt of preclearance, the City would "assume the operation and maintenance of the facilities" and assume the "assets, liabilities, and other contractual obligations" of GUD; and (5) that upon that assumption, the GUD and its Board would  no longer have any authority or liability and the GUD will be dissolved. At the hearing, Peden filed a motion for continuance, which was denied.

¶6.     Because Peden refused to join in the agreed order, the court proceeded with the hearing on the summary judgment motion. At the same time, the court also heard Britt's Motion to Intervene. The only testimony taken was that of Ray Vecchio, the author of the original bill which created the

3

GUD. The chancellor also took judicial notice of the court file in the annexation proceedings. After a brief recess, the chancellor issued a ruling from the bench in which the City's summary judgment motion was granted. In so ruling, the chancellor stated that the issues raised in Peden's motion were already decided by Chancellor Patterson's ruling in the annexation case, with the exception of the Voting Rights Act preclearance issue. However, the City was prevented from seeking preclearance until all pending litigation was finalized in the trial courts, including this pending litigation. Therefore, this issue was premature. Because summary judgment was appropriate, Britt's motion for intervention was ruled moot. Peden appeals the judgment entered on March 19, 2002, raising four issues; however, in the interest of judicial efficiency, we shall combine two of those issues.

## ANALYSIS

### I.  WHETHER THE CHANCELLOR ERRED BY GRANTING SUMMARY JUDGMENT IN FAVOR OF THE CITY.

¶7.  In reviewing a trial court's grant of summary judgment, this Court's standard of review is well settled:

> As to the review of a trial court's granting of a motion for summary judgment under Rule 56, we employ a de novo standard of review and the motion should be granted only when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. [**Hartford Cas. Ins. Co. v. Halliburton Co.**, 826 So.2d 1206, 1209 (¶ 6) (Miss. 2001)] (citations omitted). *See also* **Brown v. Credit Ctr., Inc.**, 444 So.2d 358, 362-65 (Miss. 1983) and its progeny.

**Richardson v. Sara Lee Corp.,** 847 So.2d 821, 823 (¶ 5) (Miss. 2003). Peden asserts that because the City put on no witnesses, the City offered no evidence in this matter. This Court disagrees. The City offered the trial court's entire three-volume record in the annexation case as proof that the issues contained in Peden's complaint were properly before Chancellor Patterson. "The trial court may take

4

judicial notice of available evidence in its own court files." ***Gulf City Fisheries, Inc. v. Bobby Kitchens, Inc.***, 518 So.2d 661, 664 (Miss. 1988) (citing ***Johnson v. Ford Motor Co.***, 354 F. Supp. 645, 647 (N.D. Miss. 1973); 29 Am. Jur. 2d *Evidence* § 57, at 89-90 (1967); 31 C.J.S. *Evidence* § 50(1), at 1018 & § 50(2), at 1022). *See also* Miss. R. Evid. 201.

¶8.     We note that Chancellor Patterson's ruling in the annexation matter is not contained in the record on appeal.

> Mississippi appellate courts may not consider information that is outside the record. ***Dew v. Langford***, 666 So.2d 739, 746 (Miss. 1995). The trial court's rulings are presumed correct, and this presumption will prevail unless the record shows otherwise. ***Id.***; ***Myers v. Miss. Farm Bureau Mut. Ins. Co.***, 749 So.2d 1173, 1174 (Miss. Ct. App.1999).

***Hardy v. Brock***, 826 So.2d 71, 76 (¶ 26) (Miss. 2002). Thus, Peden has offered no evidence sufficient to show that summary judgment was improper. We find that summary judgment was proper where the chancellor found that a specially appointed chancellor had already found that the annexation was reasonable and that Peden's complaint contesting the annexation was barred by the doctrine of res judicata. The only remaining issue concerned preclearance under the Voting Rights Act, which was premature while this litigation was pending in the trial court. Vecchio's testimony was insufficient to defeat summary judgment. Vecchio offered his lay opinion as to what the City had to do in order to successfully complete the annexation. This, too, was included in Chancellor Patterson's order concerning the annexation.

¶9.     Inasmuch as there are no disputed facts, the City met its burden, and summary judgment was properly granted.

## II. WHETHER THE CHANCELLOR ERRED IN REFUSING TO GRANT A CONTINUANCE.

¶10. Peden filed his Motion for Continuance on the morning of the hearing, citing that he was in poor health and that he was no longer represented by counsel. We review the chancellor's decision under an abuse of discretion standard:

> The granting of a continuance is largely a matter within the sound discretion of the trial court and unless manifest injustice appears to have resulted from a denial, this Court should not reverse." ***Thomas v. Hilburn***, 654 So.2d 898, 904 (Miss. 1995) (quoting ***Hatcher v. Fleeman***, 617 So.2d 634, 639 (Miss. 1993)). This Court has further held that the trial court may exercise "reasonable latitude" in the setting and continuance of cases. ***Thomas***, 654 So.2d at 904 (citing ***Watts v. Pennington***, 598 So.2d 1308, 1312 (Miss. 1992)).

***Morgan v. Greenwaldt,*** 786 So.2d 1037, 1045 (¶ 26) (Miss. 2001).

¶11. Peden argues that the matter should have been continued because he was in poor health and taking medication. The record reflects that Peden left the courtroom at one point to "go and make a phone call to [his] cardiologist." However, the record does not reflect how long he was gone, but does reflect that after the court called a recess, Peden was in the courtroom and actively participated in the hearing before the trial court, including questioning his own witness.

¶12. In furtherance of his argument, Peden asserts that he was "forced to go forward unrepresented by counsel due to a sudden change of events that had occurred only 12 hours earlier and, consequently, caused Peden's attorney to now become his adversary and oppose Peden at the hearing and act against Peden's interest to the extent that his attorney actually cross-examined the sole witness called by Peden." The chancellor stated that Peden had been acting pro se since his motion was filed June 29, 2000, through the hearing of March 19, 2002, with the exception of a brief

6

appearance by Kihyet. Additionally, Kihyet represented the Board, of which Peden was a member, and on behalf of the Board entered into the Agreed Order, which would resolve this matter on its behalf.

¶13. Based upon the foregoing, we cannot say that the chancellor abused her discretion in denying the motion for continuance. Therefore, this issue is without merit.

### III. WHETHER THE CHANCELLOR ERRED IN THE ENTRY OF THE AGREED ORDER BETWEEN THE CITY AND THE BOARD.

¶14. Peden asserts in this brief that the GUD was never granted leave to intervene and, therefore, was never a party to this litigation. Peden's reliance on *Dillon v. Allen-Parker Co.*, 223 Miss. 359, 78 So. 2d 357 (1955), is misplaced. In *Dillon*, although the Mosseler Acceptance Company was not named as a defendant, it was permitted to enter an appearance and file a motion to dismiss for want of territorial jurisdiction. The Mosseler Acceptance Company asserted that it was doing business as Allen-Parker Company, the named defendant. Because Dillon failed to raise an objection at the trial court level, he was barred from doing so on appeal and the dismissal was affirmed. *Dillon*, 78 So.2d at 367.

¶15. In the case sub judice, Peden did not object in the trial court to the intervention of the other commissioners. The remaining commissioners filed a Motion to Intervene and for Joinder of Parties Pursuant to Miss. R. Civ. P. 18, 20 and 24. The Agreed Order entered by the trial court states that the commissioners "intervene in this action for the purpose of the entry of this Order." Peden failed to object in the trial court, and the remaining commissioners were permitted to intervene pursuant to the Agreed Order. Therefore, this issue is without merit.

## CONCLUSION

¶16. For the foregoing reasons, we affirm the summary judgment granted in favor of the City of

Gautier.

¶17. **AFFIRMED.**

**SMITH, C.J., WALLER AND COBB, P.JJ., GRAVES AND DICKINSON, JJ., CONCUR. EASLEY, J., CONCURS IN RESULT ONLY. DIAZ, J., NOT PARTICIPATING.**